McMICHAEL COMPANY and Hartford Accident & Indemnity Company, Petitioners,

v.

Lloyd CALDWELL, and the State Industrial Court, Respondents.

No. 51623.

Court of Appeals of Oklahoma, Division 2.

April 3, 1979.

Rehearing Denied April 20, 1979.

Certiorari Denied June 11, 1979.

Released for Publication by Order of Court of Appeals June 14, 1979.

A. M. Covington, Covington, Farrar & Poe, Tulsa, for petitioners.

Samuel P. Manipella, Edgar, Manipella & Hinds, Tulsa, for respondents.

BRIGHTMIRE, Judge.

Compensation claimant, Lloyd Caldwell, was injured while working as a welder for McMichael Company at its Tulsa asphalt plant. He was awarded a 300-week temporary disability order by the trial judge, and it was affirmed by the court en banc by a divided vote. Respondents appeal contending, in effect, that the industrial court had no jurisdiction over the subject matter because when injured Caldwell's status was that of an independent contractor and not an employee within the purview of the Workmen's Compensation Act.

I

The relevant facts are that Caldwell, a self-employed welder, was hired by McMichael to do the welding work in connection with a substantial remodeling of its asphalt manufacturing plant. Claimant was to furnish all necessary welding equipment and materials and, in turn, was to receive $17 an hour for his work and an additional $6 an hour for a helper, or a total of $23.

Caldwell reported to work each morning at the time ordered by McMichael's superintendent and worked until told to quit which sometimes was pretty late at night. He was given no one particular job to complete but went from one thing to another as directed by the superintendent. At times, he was told to tear a thing down, at times he put things together or in place, and sometimes the superintendent would pull him off one job and direct him to help McMichael employees or another welder who had been hired.

McMichael did not withhold income tax or social security money from Caldwell's check, nor did it pay him any extra for overtime hours worked. Claimant had worked about two and a half weeks when he was struck by a large iron basket being swung by a crane lift, knocking him about 10 feet and causing spinal injuries.

II

In resolving such a status dispute, say appellants citing *Wolfe v. Shiprock Corp.*, Okl., 467 P.2d 496 (1970), the appellate court will weigh the evidence and "undertake an independent evaluation of both law and facts." And when this is done, continue appellants, the court almost has to come to the conclusion that Caldwell was an independent contractor because he was in business for himself, furnished his own equipment and materials, and used his "own methods" of work except as to "working time" and movement from one job to another which the employer controlled "in order to correlate the efforts of the various parties working on the job." These acts, concluded appellants, did not amount to "controlling the details of the work  .  .  . [but] simply correlating the work to keep the job going smoothly."

The relevant law is not really the subject of controversy because there are a number of cases which define, explain, distinguish, and discuss the two work statuses. Typical is the statement in *Mistletoe Express Service v. Britt,* Okl., 405 P.2d 4 (1965), defining an independent contractor "for workman's compensation purposes" as:

"[O]ne who engages to perform a certain service for another, according to his own method and manner, free from control and direction of his employer in all matters connected with the performance of the service . . . ."

Neither the method of payment nor the failure to deduct social security is controlling criteria. *Cannan v. Drane,* Okl., 477 P.2d 687 (1970).

 The evidence here, to be sure, portrays, a relationship having indicia suggestive of both an employee and an independent contractor. Control, or right of control is, however, the predominate differential. Here Caldwell was not performing a service "free from the control and direction of his employer in all matters connected with [its] performance." Of course, the superintendent did not tell Caldwell how to hold the stinger or what size rod to use or at what heat to set the machine. What employer would ordinarily? Such details are not primarily those referred to in the differential delineations aimed at identifying the often indistinct and wavering line separating the two statuses in question.

Had Caldwell been told, for instance, to fashion and install a tank at a certain location according to furnished plans and specifications and there was no retained right to interfere with him until he had finished, then under those circumstances, appellants' theory would be supported by facts more typical of an independent contractor status.

### III

We hold that the trial court correctly concluded that Caldwell was an employee within the meaning of the Workmen's Compensation Act and therefore appellants' request to vacate the temporary order is denied.

BACON, P. J., and NEPTUNE, J., concur.