**MISTLETOE EXPRESS SERVICE and Reliance Insurance Company, Petitioners,**

**v.**

**Bedford B. BRITT and the State Industrial Court and William C. Holcomb, Respondents.**

**No. 41272.**

Supreme Court of Oklahoma.

July 27, 1965.

Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, for petitioners.

Childers & Keller, Oklahoma City, Walton Allen, McElroy & Vaughn, Chickasha, Charles R. Nesbitt, Atty. Gen., for respondents.

HALLEY, Chief Justice.

On June 5, 1964, Bedford B. Britt, hereinafter referred to as claimant, filed a claim for compensation against Mistletoe Express Service and its insurance carrier, Reliance Insurance Company, wherein he stated that on or about March 16, 1964, and May 5, 1964, he suffered accidental injuries arising out of and in the course of his hazardous employment with Mistletoe Express Service, consisting of injuries to his back. Thereafter, on June 24, 1964, claimant filed an amended claim in which the above allegations were again set forth, except that William C. Holcomb was added with Mistletoe Express Service as an employer. Mistletoe Express Service will be referred to as Mistletoe and William C. Holcomb will be referred to as Holcomb.

Mistletoe and its insurance carrier defended on the theory that claimant was not in the employ of Mistletoe at the times he sustained his injuries but was at those times in the employ of Holcomb, who was an independent contractor. That Holcomb had less than two employees on the dates claimant sustained his injuries, and that the State Industrial Court was therefore without jurisdiction to enter an award in the case. Holcomb admitted that claimant was in his employ, but denied generally and specifically all else contained in claimant's claim for compensation.

The trial judge at the close of the evidence found that on March 16, 1964, claimant sustained an accidental personal injury arising out of and in the course of his hazardous employment with Holcomb, consisting of an injury to his lower back; that as a result of said injury he was temporarily totally disabled and was entitled to temporary total disability compensation from May 5, 1964, at the rate of $37.50 per week, and was entitled to continuing temporary total disability compensation payments during his period of temporary total disability, not to exceed 300 weeks, or until further order of the court; and that claimant was also entitled to further medical treatment.

The trial judge further found that Holcomb was a subcontractor of Mistletoe; that Holcomb did not carry a policy of Workmen's Compensation insurance; and that Mistletoe, the prime contractor, did not require Holcomb to carry such a policy. That Holcomb was therefore primarily liable to claimant for payment of the award and Mistletoe was secondarily liable; and upon such findings, accordingly entered an award in favor of claimant.

The award was appealed to the Industrial Court en banc by Mistletoe, its insurance carrier and Holcomb, where the order of the trial judge was vacated as to Holcomb and an order entered finding that Mistletoe and its insurance carrier were primarily and fully liable to claimant for payment of the award and amending the findings of the trial judge to show that claimant was an employee of Mistletoe at the time of his injury. Mistletoe and its insurance carrier bring the case here to review this award. However, the cause and extent of claimant's disability are not here in dispute.

The evidence discloses that on March 16, 1964, Holcomb worked under an oral contract for Mistletoe as a contract agent in charge of its Chickasha office. His employment was subject to termination at the will of either, although Holcomb had been with Mistletoe for over ten years. He was subject to the general control of company supervision through Mistletoe's road men. Mistletoe owned the building in Chickasha in which its office was located, and furnished it with office equipment and necessary office supplies. Holcomb owned, operated and maintained two delivery trucks, each of which had Mistletoe's name painted thereon. It was Holcomb's duty as a contract agent to pick up and deliver all freight shipped in Chickasha by Mistletoe, and he worked a full time basis in this endeavor, using both his trucks therein. Holcomb usually drove one of the trucks himself, and the other was operated by claimant. Both wore uniforms with Mistletoe badges. Holcomb was subject to the company's instructions as to the manner in which to pack and ship freight received for Mistletoe, and as to when and where to make deliveries of Mistletoe freight. His duties were required by and were an integral part of Mistletoe's business. Holcomb was paid ten per cent of the gross funds received by Mistletoe from the business done in Chickasha, plus an additional subsidy or equipment allowance, as compensation for his services. He hired and paid wages to persons employed at the Chickasha office out of these funds, but failed to provide for a policy of workmen's compensation insurance.

The evidence further discloses that claimant sustained an accidental personal injury to his back on March 16, 1964, while loading two steel drilling bits, weighing approximately two hundred eighty pounds

apiece, onto a delivery truck owned by Holcomb. Claimant's general work consisted of driving one of Holcomb's trucks and handling Mistletoe's freight. He considered himself an employee of Mistletoe. On at least one occasion, claimant attended a meeting in Lawton of Mistletoe's employees as Mistletoe's guest. He was hired by Holcomb on October 1, 1963, and was so employed until May 5, 1964, when he was unable to continue working because of his back injury. Holcomb gave claimant instructions in the actual details in making deliveries of Mistletoe freight, but Cletus Hair, Mistletoe's road man, would occasionally advise claimant on such matters as to the method of weighing and looking up charges on freight and on how to make out weigh bills. Holcomb paid claimant $1.25 per hour and withheld social security and income tax from his wages.

This, in substance, constitutes the evidence in the case. Mistletoe and its insurance carrier first contend that claimant was not in the employ of Mistletoe at the time he sustained his injury but was at that time in the employ of Holcomb, who was an independent contractor. The Order on Appeal of the Industrial Court en banc made no specific finding on the issue involved as to whether Holcomb was an employee of Mistletoe at the time claimant sustained his injury or whether he was an independent contractor.

■ We have heretofore held that such a question is a jurisdictional question, and that in determining such question this Court in reviewing the award of the State Industrial Court will consider and weigh the evidence and make its own independent findings of fact relative to such issue. Williams et al. v. Branum et al., 192 Okl. 129, 134 P.2d 352; Ralph C. Rider Lumber Company v. Minyen et al., Okl., 317 P.2d 719; Standard Magnesium Company et al. v. Cotner et al., Okl., 332 P.2d 1; McAlester v. Tooman et al., Okl., 338 P.2d 1083; and Brewer v. Bama Pie, Inc. et al., Okl., 390 P.2d 500.

■ In Hunter Construction Company et al. v. Marris et al., Okl., 388 P.2d 5, 7, we said:

"The cases discussing the law of independent contractors are legion, and an argument easily obtained on the question whether, in a given situation, the person in question is a servant or an independent contractor; yet when such cases are reduced to their decisive substance, we find that the crux of the entire controversy is whether the employer had the right to control, or purported or attempted to control, the manner of the doing of the job by the alleged servant, which resulted in the injury. If he did have that right or exercised it regardless of his right to exercise it, then the relationship is that of master and servant; if he did not have that right, and did not exercise such right but had only the right to demand specified results, the relationship is that of independent contractor and contractee.

"Thus this Court has held, and is committed to the general rule that an independent contractor is one who engages to perform a certain service for another, according to his own manner and method, free from control and direction of his employer in all matters connected with the performance of the service, except as to the result or product of the work. (citations)."

In Page v. Hardy, Okl., 334 P.2d 782, 784, we said:

"* * * It is evident and we have so held that as a general rule the line of demarcation between an independent contractor and a servant is not clearly drawn, but the question of such relationship must be determined upon the facts peculiar to such case. The various elements to be considered are (a) the nature of the contract between the parties, whether written or oral; (b) the degree of control which, by the agreement, the employer may exercise on the details of the work or the in-

dependence enjoyed by the contractor or agent; (c) whether or not the one employed is engaged in a distinct occupation or business and whether he carries on such occupation or business for others; (d) the kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (e) the skill required in the particular occupation; (f) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work; (g) the length of time for which the person is employed; (h) the method of payment, whether by the time or by the job; (i) whether or not the work is a part of the regular business of the employer; (j) whether or not the parties believe they are creating the relationship of master and servant; and (k) the right of either to terminate the relationship without liability."

The facts in the case of Mistletoe Express Service v. Culp, Okl., 353 P.2d 9, 12, are not only similar to but almost identical with the facts in the instant case. We there held that the evidence was sufficient to establish that the agent, Wolfe, was an employee of Mistletoe, and not an independent contractor, wherein the evidence disclosed that:

"* * * the agent, Wolfe, was employed under oral contract by Mistletoe as a commission agent in charge of its Norman office; that he was subject to the general control of the company supervision at all times, even to the extent of directing him to make specific pickups of freight at off hours; that Mistletoe rented the Norman office, paid the monthly rental and furnished it; that Mistletoe sent the lease agreement to the agent Wolfe and directed him to take it to the lessor for signature; that the phone was in its name and it paid therefor; that the agent owned, operated and maintained the delivery trucks, each of which had Mistletoe's name painted thereon; that it was the agent's duty to pick up and deliver all freight in the city of Norman shipped by Mistletoe; that agent Wolfe worked full time for Mistletoe, and his trucks were used for nothing else; that his duties were required by and were an integral part of Mistletoe's business; that he was employed subject to the will of either, each being able to terminate the employment on two weeks' notice; that his monthly pay was ten percent of the gross funds received by Mistletoe from the business done in Norman; that he was given an employee number, social security and income tax was withheld from his salary, and he was required to attend regular employee meetings; that he did not belong to the employees' union and did not participate in the retirement program; that the actual detail of making the deliveries was under his direction; that he was required to have two employees in the Norman office, a secretary and a truck driver, Mistletoe suggesting the amount of salary for each; that he was paid a subsidy of $375 per month with which to pay such salaries; that he considered himself an employee subject to the direction of Mistletoe with some leeway as to the carrying on of the actual details; that Mistletoe considered him a commission agent subject to its general control through the supervisors with the actual details to be worked out by him; that all advertising by Mistletoe indicated that the Norman branch office was operated by it through its agents, servants and employees; that when articles arrived at the Norman office it was his duty to deliver them to the person or firm designated."

Following the rules heretofore announced, we have carefully considered and weighed the evidence in this case as applied to the previous decisions of this Court, and find and conclude therefrom that it

establishes that Holcomb was an employee of Mistletoe at the time claimant sustained his injuries, rather than an independent contractor. There was also ample evidence in this cause that Mistletoe not only had knowledge of, but openly acquiesced in Holcomb's employment of claimant as an employee of its Chickasha office.

In Chickasha Plumbing Company et al. v. Rogers et al., Okl., 366 P.2d 410, 413, we said:

" * * * The relation of employer and employee may arise under our Workmen's Compensation Act by implied contract, such as knowledge and acquiescence of the employer in the services performed for his benefit by the employee. McAlester v. Tooman, Okl., 338 P.2d 1083; Garr v. Collins, 208 Okl. 113, 253 P.2d 838."

We think that Barnsdall Refining Co. v. State Industrial Commission et al., 163 Okl. 154, 21 P.2d 749, is in point here. In that case one A. J. Schlosser, division superintendent for Barnsdall Refining Co., wrote a letter to R. W. Shannon, superintendent of the company's White Oak plant, wherein he instructed that certain unused pipe be taken up, disjointed, and stored at the plant. He further instructed therein that the work be given to those in the organization who needed it most; that the work was to be paid for at certain prices per joint of pipe, depending upon the size of the pipe; and that the company was to furnish the necessary tools and the company truck. Shannon talked to one H. L. McFall, an employee of the plant, who took the letter home and delivered it to his son, Virgil. An oral agreement was made between Virgil McFall and Shannon to perform the work outlined in the letter on the terms stipulated therein. Some of the pipe was too large for one man to handle conveniently and an agreement was made between Virgil McFall and claimant for claimant to assist him. Claimant conferred with Shannon, who said in effect that he had no objection to claimant assisting Virgil McFall, but that he would have to look to

Virgil for his pay. After claimant worked a day and a half, and while they were removing some of the pipe, a splinter of steel struck claimant in the eye resulting in the total loss of the eye. In affirming an award of the State Industrial Commission in favor of claimant against Barnsdall Refining Co., we used the following language starting at page 750 of that opinion:

"In considering the various elements involved in the state of facts presented herein, we must conclude that the finding of the Industrial Commission to the effect that McFall was an employee and not an independent contractor is sustained by competent evidence.

"This court has recognized the rule that under some conditions and circumstances an employee may contract with another person to assist him in the performance of his duties and that said person occupies the status of an employee of the employer. See St. Louis & San Francisco Railway Company v. Bagwell, 33 Okl. 189, 124 P. 320, 40 L.R.A. (N.S.) 180; Kali Inla Coal Company v. Ghinelli, 55 Okl. 289, 155 P. 606.

* * * * * *

"In the instant case, claimant was engaged in labor in connection with the carrying on of the business of petitioner. He was engaged by Virgil McFall, who was not an independent contractor but merely an employee of the company, with the knowledge, consent, and acquiescence of the plant superintendent whose duty it was to hire and discharge the employees whose work was connected with the plant. The superintendent in turn was acting under authority of a letter received from the division superintendent.

"In consideration of these facts as applied to the previous decisions of this court, we conclude that the finding of the Industrial Commission that claimant was an employee of petitioner is reasonably supported by competent evidence."

Mistletoe and its insurance carrier cite and rely upon Roberts Truck Company et al. v. Singleterry et al., Okl., 357 P.2d 217; and Parkhill Truck Company v. Reynolds, Okl., 359 P.2d 1064, in support of their first proposition. We do not think these cases applicable here because of a material difference in the facts.

In the Roberts case, supra, claimant sustained an accidental personal injury while loading a Roberts' truck with a cargo of tile for delivery to J. & J. Wholesale Tile Company. We there affirmed an award entered by the Industrial Court finding that claimant was an employee of Roberts Truck Service at the time of his injury. Roberts Truck Service was an independent contractor engaged in freight hauling for hire; hired its own employees, including claimant; and claimant was under its direction and control. Roberts had a number of regular customers, J. & J. Wholesale Tile Company being only one of them. This of course was unlike the instant case where Holcomb, who was not an independent contractor but merely an employee working on a full time basis for Mistletoe, hired claimant to work in Mistletoe's Chickasha office with its knowledge and acquiescence.

The Parkhill case, supra, was an action for a truck driver's unpaid wages. We there said that actions arising under the Workmen's Compensation Act were inapplicable to actions for the recovery of wages. However, this case does not hold, as contended in Mistletoe's brief, nor imply that actions arising under the Workmen's Compensation Act are exclusively controlling in determining whether a given master is a principal or an employer. This case is therefore not helpful.

█ We conclude therefore that the finding of the State Industrial Court that claimant was an employee of Mistletoe at the time he sustained his injury is reasonably supported by competent evidence.

Mistletoe and its insurance carrier next contend that "Holcomb had only one employee and as such the State Industrial Court had no jurisdiction to hear this cause." In view of our holding that claimant was an employee of Mistletoe, we deem it unnecessary to discuss this proposition.

Award sustained.

JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN, BERRY and LAVENDER, JJ., concur.